UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SHERESE BOURNE,

        Plaintiff,       **MEMORANDUM AND**
                      **ORDER**
   -against-           CV 05-6067 (ARL)

COUNTY OF NASSAU, et al.,

        Defendants.
----------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

  Plaintiff Sherese Bourne ("Bourne" or "the plaintiff") brings this action against the County of Nassau and individually named officers of the Nassau Country Police Department (collectively "Defendants") alleging: (1) deprivation of civil, state and constitutional rights under 42 U.S.C. § 1983; (2) municipal liability against the County of Nassau County; (3) false arrest and false imprisonment; (4) unlawful search; and (5) assault. (*See* Compl. ¶¶ 54-72.) Bourne has voluntarily withdrawn her claims against the Nassau County Police Department and all claims brought under 42 U.S.C. §§ 1981, 1985. (*See* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. at 4 n.1.)

  The parties have consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c). (*See* Docket Entries 49 & 53.) Defendants now move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, Defendants' motion is granted and Bourne's complaint is dismissed in its entirety.

**BACKGROUND**

This action arises due to Bourne's arrest on August 15, 2005, for criminal sale of a controlled substance. (Pl.'s & Defs.' 56.1 Stmt ¶ 20.)[1] Bourne's arrest resulted from an investigation conducted by Nassau County Police Detectives Silvia Marquez ("Detective Marquez") and Richard Westhoff ("Detective Westhoff") based upon information received from a concerned citizen (the "C.I.").[2] (*Id*. ¶ 1; Dep. of Detective Marquez at 61.) This C.I. had previously provided the Nassau County Police Department with reliable information and participated in several drug buys that led to one conviction or guilty plea for criminal sale of heroin.[3] (Defs.' 56.1 Stmt. ¶ 29; *see also* Dep. of Detective Marquez at 75-76; Dep. of Detective Westhoff at 90, 95; Decl. of Nicole Denver, Esq., Ex. G.)

It is undisputed that, in 2004, the C.I. informed Detectives Marquez and Westhoff that a black female named Sherese Bourne residing in Roosevelt, New York, was selling crack cocaine in the area. (Pl.'s 56.1 Stmt. ¶ 1; Dep. of Detective Westhoff at 104-05; Dep. of Detective Marquez at 62-64.) The C.I. provided Detectives Marquez and Westhoff with Sherese Bourne's full name. (Dep. of Detective Marquez at 63.) The C.I. also claimed to know Sherese Bourne from the neighborhood and to have personally witnessed Bourne selling drugs. (Defs.' 56.1

---

[1] "Pl.'s 56.1 Stmt." refers to Bourne's Local Rule 56.1 Statement, and "Defs.' 56.1 Stmt." refers to Defendants' Local Rule 56.1 Statement.

[2] Although Detective Marquez and Detective Westhoff are not named defendants in this action, the parties both concede that Bourne sued these individuals under the names "Detective 'Jane' Silvia" and "Detective 'John' Ridhic," respectively. In deciding the foregoing motions, the court therefore treats Detective Marquez and Detective Westhoff as those named defendants.

[3] The particular outcome of this unrelated case is privileged. However, the record confirms that the suspect was arrested, confessed and "went to jail." (*See* Defs.' Reply Mem. in Further Supp. of Summ. J. at 3 n.2; Dep. of Detective Marquez at 75.)

Stmt. ¶ 4; Dep. of Detective Marquez at 62; Dep. of Detective Westhoff at 106.) Although the C.I. was unsure of Sherese Bourne's exact age, the C.I. stated that Sherese Bourne was twenty-six to twenty-eight years old, with a possible birth date of April or July, in the 1970's, possibly 1978. (Pl.'s & Defs.' 56.1 Stmt. ¶ 5; Dep. of Detective Marquez at 63, 122.) The C.I. further informed Detectives Marquez and Westhoff that Sherese Bourne had a prior arrest for marijuana possession. (Pl.'s & Defs.' 56.1 Stmt. ¶ 7.)

Armed with this information, Detectives Marquez and Westhoff undertook a criminal justice data search that produced information about the plaintiff. (Dep. of Detective Marquez at 63-65.) The available data on the plaintiff mirrored the information provided by the C.I. (*Id*.) Consistent with the information gleaned from the database, Sherese Bourne is a black female, residing in Roosevelt, New York, born in July 1978, placing her in her 20s in 2004, and has a prior arrest for marijuana. (Pl.'s & Defs.' 56.1 Stmt. ¶¶ 3, 6, 8.)

Armed with a cell phone number, Detectives Marquez and Westhoff had the C.I. make an undercover call to purchase crack cocaine from Sherese Bourne on November 30, 2004. (Defs.' 56.1 Stmt. ¶ 9; Dep of Detective Marquez at 120.) A woman who identified herself as "Sherese" answered the phone. (*Id*.) Sherese agreed to meet the C.I. in the vicinity of 38 West Roosevelt Avenue, Roosevelt, New York. (*Id*.) The C.I. was instead met by another individual, later identified as Angelica Riley, who delivered crack cocaine. (Pl.'s Mot. in Limine, Ex C at 1.).

On or about December 15, 2004, Detectives Marquez and Westhoff arranged for the C.I., to place another call to "Sherese" to purchase crack cocaine. (Pl.'s & Defs.' 56.1 Stmt. ¶ 11.) This time "Sherese" showed up to deliver the crack cocaine to the C.I. (Defs.' 56.1 Stmt ¶ 12; Dep. of Detective Westhoff at 112.) Detective Marquez's supplementary report from this

3

purchase states that "Sherese" arrived in a red minivan with New York registration DAE8342. (Decl. of Nicole Denver, Esq., Ex. H at 1.) Subsequent investigation revealed that this vehicle was registered to a Diane Riley, residing at 38 West Roosevelt Avenue, the location of the first buy. (Pl.'s 56.1 Stmt. ¶ 12; Dep. of Detective Westhoff at 137.)

On or about January 10, 2005, Detective Marquez and Detective Westhoff, accompanied by Detective Melvin Boone ("Detective Boone"), once again met with the C.I. (Pl.'s & Defs.' 56.1 Stmt. ¶ 13.) The C.I. arranged for a third purchase of crack cocaine from "Sherese." (Defs.' 56.1 Stmt. ¶ 13; Dep. of Detective Boone at 45.) Detective Boone drove the C.I. to the area of West Roosevelt Avenue to meet with "Sherese" and purchase the crack cocaine. (Pl.'s & Defs.' 56.1 Stmt. ¶ 14.) Detective Boone was approximately ten feet away from "Sherese" and the C.I. when the transaction that took place. (*Id*. ¶ 15.) Detective Boone testified that he saw "Sherese's" face and observed her for around a minute. (Dep. of Detective Boone at 47-49.)

Both face-to-face drug buys between "Sherese" and the C.I. were audiotaped and the second buy was videotaped. (Pl.'s & Defs.' 56.1 Stmt. ¶ 19.) Detective Marquez monitored both drug transactions with "Sherese" via a transmitter. (Dep. of Detective Marquez at 69-71.) Detective Marquez also monitored the phone calls that the C.I. placed to "Sherese." (*Id*. at 67.) Although Detective Marquez's interview notes from the first meeting with the C.I. describe "Sherese" as "Jamaican," Detective Marquez did not detect any accent when she monitored the three phone calls that the C.I. placed to "Sherese." (*Id*.; Decl. of Nicole Denver, Esq., Ex. D at 2.) Detectives Marquez and Westhoff viewed the videotape but found that it difficult to identify "Sherese" from the video. (Dep. of Detective Westhoff at 98-99, 165; Dep. of Detective Marquez at 71.) Detective Boone did not review any of the tapes prior to Bourne's arrest. (Dep.

4

of Detective Boone at 55.)

On or about February 8, 2005, the C.I. identified the plaintiff as "Sherese" from a six-panel photo pack. (Pl.'s & Defs.' 56.1 Stmt. ¶ 17; Decl. of Nicole Denver, Esq., Ex. L.) The photo pack was assembled using the plaintiff's arrest photograph and five arrest photos of women who matched Bourne's age and physical appearance. (Dep. of Detective Marquez at 79-80.) On the basis of the C.I.'s photo identification of the plaintiff, Defendants decided to arrest Bourne but waited approximately six months out of concern for the C.I.'s safety. (Dep. of Detective Marquez at 92, 94.) On or about August 15, 2005, at Detectives Westhoff and Marquez's direction, defendant Nassau County Police Officer Charles Johnson ("Officer Johnson") arrested Bourne for criminal sale of a controlled substance. (Pl.'s & Defs.' 56.1 Stmt. ¶ 20.) Officer Johnson arrested Bourne within a block of the West Roosevelt Avenue location where the C.I. made the purchases of crack cocaine from Sherese. (Dep. of Marquez at 104-105; Dep. of Officer Johnson at 38-39.)

Bourne was taken into custody at the Nassau County Narcotics Bureau. (Pl.'s & Defs.' 56.1 Stmt. ¶ 23.) Subsequent to Bourne's arrest, Detective Marquez searched the plaintiff to ensure that she was not carrying any contraband. (Dep. of Detective Marquez at 96-97; Dep. of Bourne at 73-74.) While the plaintiff was in custody, Detective Boone identified Bourne as "Sherese." (Pl.'s & Defs.' 56.1 Stmt. ¶ 22.) Finally, after being advised of her Miranda rights, Bourne admitted that she sold crack cocaine when she was younger but denied involvement in any recent transactions. (Dep. of Detective Marquez at 93.)

Bourne was incarcerated at the Nassau County Correctional Center. (Pl.'s & Defs.' 56.1 Stmt. ¶ 24.) Upon her admittance, she was strip searched by correctional officers. (Dep. of

5

Bourne at 123-24.)  Approximately seven to eight days later, the C.I. placed a phone call to Detective Westhoff to state that he/she had identified the wrong person from the photo pack. (Pl.'s & Defs.' 56.1 Stmt. ¶ 25; Dep. of Detective Westhoff at 174-75.)  Detective Westhoff and Detective Marquez immediately notified their supervisors and the District Attorney's Office that the C.I. had recanted.  (Pl.'s & Defs.' 56.1 Stmt. ¶ 26.)  The District Attorney's Office thereafter dismissed the charges against the plaintiff.  (*Id*. ¶ 28.)  In total, the plaintiff was incarcerated for fourteen days.  (*Id*. ¶ 24.)

The plaintiff, Bourne, filed this action on December 27, 2005.  Defendants have since filed the foregoing motion for summary judgment.

## ANALYSIS

Bourne alleges that Defendants: (1) violated 42 U.S.C. § 1983 due to her false arrest; (2) engaged in an unlawful search; (3) engaged in a municipal policy that resulted in the deprivation of her rights; and (4) committed assault.  Defendants move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**I.     Standard**

Summary judgment shall be "rendered if the pleadings, the discovery and disclosure materials on the files, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'  A fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (citations and internal quotation marks omitted). "Although the burden of demonstrating that no material fact exists lies with the moving party, 'unless the nonmoving party offers some hard evidence showing that its version of the events is not wholly fanciful, summary judgment is granted to the moving party.'" *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (quoting *McCarthy*, 482 F.3d at 202).

## II.     As a Matter of Law, Defendants Had Probable Cause to Arrest Bourne

Both parties rightfully focus their motion papers upon whether Defendants had probable cause to arrest Bourne, which is the key threshold issue in each of Bourne's claims. "Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368-69 (2d Cir. 2007) (citations omitted). Probable cause does not, however, require an officer to be certain of a successful prosecution. *Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989). "Probable cause is to be assessed on an objective basis [and] 'depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.'" *Zellner*, 494 F.3d at 369 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). In addition, probable cause is determined based upon the collective or imputed knowledge of all officers involved in a criminal investigation. *Id.* (citations omitted).

7

It is undisputed that the C.I., a concerned citizen, informed Detectives Marquez and Westhoff that a black woman named Sherese Bourne, residing in Roosevelt, New York, was selling crack cocaine in the area. This same C.I. had previously supplied information which led to the arrest and conviction or guilty plea of another drug dealer, and the C.I. was considered by the Defendants to be reliable.[4] The C.I. informed Defendants that he/she personally knew Sherese Bourne from the neighborhood and had witnessed her selling drugs. In addition, although the C.I. was unsure of Sherese Bourne's age, the C.I. indicated that Bourne was approximately twenty-six to twenty-eight years old with a possible birth date of April or July, in the 1970's. The C.I. further informed Detectives Marquez and Westhoff that Sherese Bourne had a prior arrest for marijuana possession. Relying on this information, Defendants conducted a criminal justice database search that disclosed the identity of the plaintiff. The database information on Bourne matched the information provided by the C.I. Acting upon the information supplied by the C.I., Defendants arranged for the C.I. to make several face-to-face buys from a woman who clearly identified herself as "Sherese." Finally, Bourne's arrest was not

---

[4] Bourne filed a motion in limine seeking to preclude any evidence at trial that was obtained from the C.I. because it is hearsay and unreliable. This motion is denied as moot due to the foregoing memorandum and order granting summary judgment. To the extent that Bourne argues that information obtained from the C.I. is inadmissible and should not be considered in rendering this decision, the court disagrees. It is well-settled that hearsay evidence may be used in establishing probable cause. *See* FED. R. CRIM. P. 41(c)(1) (2002 advisory committee notes) (noting that "hearsay evidence may be used to support probable cause" was deleted from rule because "the case law has become perfectly clear on that proposition"); *see also Illinois v. Gates*, 462 U.S. 213, 241-42 (1983) (citing *Jones v. United States*, 362 U.S. 257, 269 (1960), *overruled on other grounds*, *United States v. Salvucci*, 448 U.S. 83 (1980)). Also, the information provided by the C.I. meets the legal standard for reliability. *See United States v. Wagner*, 989 F.2d 69, 72-73 (2d Cir. 1993) ("Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of providing reliable information, or if it is corroborated in material respects by independent evidence.").

effected until after the C.I. picked Bourne out of a photo array.

"In assessing the reliability of the information provided by a confidential informant, courts must consider the 'totality of the circumstances.'" *Nelson v. Hernandez*, 524 F. Supp. 2d 212, 222 (E.D.N.Y. 2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 246 (1983)). The Supreme Court has long held "that identification of the suspect by a reliable informant may constitute probable cause for arrest where the information given is sufficiently accurate to lead the officers directly to the suspect." *Wong Sun v. United States*, 371 U.S. 471, 480 (1963) (citing *Draper v. United States*, 358 U.S. 307 (1959)). Given the information known to Defendants at the time of Bourne's arrest, this court finds that no reasonable jury would conclude that Defendants acted in bad faith or unreasonably when they relied upon the C.I.'s identification of Bourne. Not only did the C.I. have proven reliability, but virtually every detail of the C.I.'s information was corroborated by Defendants' independent investigation. Not only were Defendants able to corroborate the C.I.'s description of Sherese Bourne, but they also personally observed face-to-face drug buys from a woman who identified herself as "Sherese" and who was later identified by the C.I. in a photo array as the plaintiff, Sherese Bourne. Even if the C.I. had no proven reliability, his or her status as a concerned citizen with no known motive to lie, coupled with the C.I.'s participation in several drug buys and Defendants' independent investigation that corroborated the information supplied, would have provided a reasonable basis for finding probable cause. *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (holding that "information provided by an identified bystander with no apparent motive to falsify has a peculiar likelihood of accuracy and . . . an identified citizen informant is presumed to be reliable") (citations and internal quotation marks omitted); *U.S. v. Wagner*, 989 F.2d 69, 73 (2d

9

Cir. 1993) (holding that a confidential informant's "participation in supervised drug purchases is powerful corroborative evidence for the purposes of determining probable cause") (citations omitted).

Although Defendants acknowledge that the charges against Bourne were dismissed when the C.I. later reported that she had misidentified the plaintiff, this is not fatal to Defendants' showing of probable cause. Probable cause "can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *See Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 455 N.E.2d 1248 (1983)). Further, the Supreme Court has "never required that informants used by the police be infallible." *Gates*, 462 U.S. at 246 n.14.

Bourne asserts that Defendants should have conducted a more thorough investigation prior to making the arrest. However, as Bourne herself acknowledges, if Defendants had established "a reasonable basis for believing there is probable cause," than they were "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *See Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir. 2006) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)). Bourne nonetheless argues that Defendants did not establish probable cause because they ignored evidence indicating that Bourne was not "Sherese." In particular, Bourne points to the evidence that: "Sherese" had a different cell phone number than Bourne; "Sherese" drove a car registered to Diane Riley; and Diane Riley's sister, Angelica Riley, was the person who sold crack cocaine to the C.I. on December 1, 2004. Bourne thus contends that Defendants failed to investigate whether there was a connection between Diane Riley, Angelica Riley and "Sherese." Even assuming that these additional investigative

steps would have somehow proved Bourne's innocence, Defendants did not have a duty to explore such theoretically plausible possibilities. *See Curley*, 268 F.3d at 70 ("[T]he arresting officer does not have to prove plaintiff's version wrong before arresting him. Nor does it matter that an investigation might have cast doubt upon the basis of the arrest.") (citing *Krause*, 887 F.2d at 371-72). As such, this evidence does not negate Defendants' showing of probable cause based upon the C.I.'s identification.

In addition, Bourne argues that prior to the first sale on November 30, 2004, the C.I. described "Sherese" as being of Jamaican descent and living on West Roosevelt Avenue. Bourne argues that had Defendants followed up on these details, they would have realized that this description did not fit Bourne, who is not of Jamaican descent and who does not live on West Roosevelt Avenue. Neither of these facts are the "red flags" that Bourne claims they are. As an initial matter, a reasonable jury could not conclude that Defendants lacked probable cause simply because the home address given by Bourne at the time of her arrest was not on West Roosevelt Avenue. To the contrary, the record reflects that Detective Marquez provided Detective Johnson with the address they obtained from the C.I. during their investigation, and Bourne was arrested leaving that location. (Dep. of Marquez at 63-64, 82; Dep. of Johnson at 33-39. ) Even the home address given by Bourne at the time of her arrest was probative because it confirmed that she lived in Roosevelt, New York, as claimed by the C.I. Moreover, Defendants were also aware that the red van used by Sherese Bourne to deliver drugs to the C.I. on December 15 was registered to a West Roosevelt Avenue address. Finally, the address where Bourne claimed to have been living at the time is located within a block of West Roosevelt Avenue the location where the drug sales occurred. (*See* Dep. of Marquez at 104-105; Dep. of Officer Johnson at 38-39; Defs.'

11

Reply Mem. in Further Supp. of Summ. J. at 4.)

The argument that Defendants should have known they had the wrong person because Bourne does not speak with a Jamaican accent is similarly unpersuasive. Although Detective Marquez was told by the C.I. that "Sherese" was of Jamaican descent, this fact alone does not warrant the conclusion that Bourne asks the court to draw; that is, "Sherese" of necessity spoke with an accent. Detective Marquez monitored the telephone calls and the actual drug sales between the C.I. and Sherese and did not detect a Jamaican accent. (Dep. of Detective Marquez at 68-70.) Hence, Defendants would have no reason to think that the absence of any accent in Bourne's speech might signal a problem. Similarly, Detective Westhoff's review of the audiotape failed to assist in identifying "Sherese" because of the quality of the tape.[5] Based upon what was known to Defendants at the time of the plaintiff's arrest, it was reasonable for them to conclude that the Sherese Bourne they arrested was the right Sherese Bourne.

However, drawing this inference in Bourne's favor and assuming that a reasonable jury would hear that "Sherese" spoke with a Jamaican accent, this still does not negate Defendants' showing of probable cause. "Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Nelson*, 524 F. Supp. 2d at 223 (quoting *Krause*, 887 F.2d at 372). Considering all the information known to Defendants prior to effecting this arrest, it is beyond

---

[5] The court has reviewed the audio and videotapes. The audiotape lasts only one minute and twenty seconds and is largely garbled. In the videotape, "Sherese" speaks a mere four to five sentences and, contrary to the plaintiff's claim, it is far from obvious from either tape that "Sherese" speaks with a Jamaican accent.

12

doubt that they had sufficient probable cause to arrest Bourne.  The C.I.  identified Bourne after making two face-to-face drug purchases from a suspect named "Sherese."  The C.I. also stated that she knew Sherese Bourne from previous encounters in the neighborhood.  Further, Bourne has in no way negated the fact that Detective Marquez testified that she did not detect that "Sherese" spoke with an accent.  *Even if* the law required Defendants to weigh the available evidence as Bourne suggests, Defendants were entitled to rely upon the C.I.'s identification of Bourne and Detective Marquez's firsthand assessment of "Sherese's" voice above and beyond the audio and videotapes.  Finally, any doubt that would have remained after Bourne's arrest was eliminated when Detective Boone confirmed that Bourne was "Sherese."

This same analysis applies to Bourne's argument that there was a discrepancy between the physical weight of the "Sherese" who appears in the videotape and the plaintiff.  In support of this argument, Bourne directs the courts attention to her arrest photo used in the photo array.  This photo was obtained from the Swift Justice databank, was taken two to three years prior and merely shows Bourne from the neck up. (*See* Decl. of Nicole Denver, Esq.*,* Ex. L; Dep.of Bourne at 62 .)  Essentially conceding that a comparison between the face in the photo array with the video is inconclusive, Bourne instead asks the court to compare their necks.  The absurdity of this argument given the circumstances of this case does not warrant further discussion.

In sum, none of the evidence raised by Bourne sufficiently overcomes Defendants' showing of probable cause.  Of particular importance is evidence provided by the C.I. that corroborated her identification: that "Sherese Bourne" and Bourne both shared the same full name; that both lived in Roosevelt, New York; that both had prior convictions for marijuana possession; and that Bourne was arrested within close proximity of the C.I.'s purchases of crack

13

cocaine from "Sherese." The C.I.'s identification was further corroborated by Detective Marquez's listening firsthand to "Sherese's" voice on a number of occasions and by Detective Boone's identification of Bourne after her arrest. This evidence is sufficient to warrant a person of reasonable caution to believe that Bourne was, in fact, "Sherese." The law simply does not set a higher burden for establishing probable cause. Given the undisputed evidence and the totality of circumstances in this action, Defendants have therefore established as a matter of law that the C.I.'s identification of Bourne created probable cause to arrest Bourne.

### III. Bourne's Claims Are Dismissed

The court's finding of probable cause as a matter of law is largely determinative of each of Bourne's claims because Bourne bases each claim upon the proposition that she was unlawfully arrested. First, Bourne claims that Defendants violated 42 U.S.C. § 1983 by committing false arrest and false imprisonment. Probable cause is an absolute defense to this claim. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 118-19 (2d Cir. 1995) (holding that "[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause") (citation omitted).[6] Bourne also claims that Defendants continued to violate her rights by keeping her incarcerated for fourteen days despite having access to exculpatory evidence. In *Russo v. City of Bridgeport*, the Court of Appeals for the Second Circuit held that a defendant's failure to watch a videotape that would have conclusively proved a plaintiff's

---

[6] The question of qualified immunity essentially boils down to a similar analysis. *See Boyd v. City of New York*, 336 F.3d 72, 75 n.5 (2d Cir. 2003) (citing *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)). Furthermore, a Section 1983 claim for false arrest is identical to a claim for false arrest under New York law, *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996), and false arrest and false imprisonment are identical under New York law, *Singer*, 63 F.3d at 118. In other words, the court need not conduct multiple analyses in addressing probable cause in this action.

14

innocence while the plaintiff was jailed for 217 days sufficiently "shocked the conscience" to raise a viable claim under the Fourth Amendment. 479 F.3d 196 (2d Cir. 2007). Here, Defendants *did* view the relevant videotapes, which do not conclusively prove Bourne's innocence. Bourne also admits that Defendants took reasonable steps to secure Bourne's release immediately after the C.I. recanted, and that Bourne was only incarcerated for a total of only fourteen days. No reasonable jury would find that Defendants acted egregiously. Defendants have thus established as a matter of law that Bourne's incarceration did not shock the conscience nor violate her Fourth Amendment rights. Accordingly, Bourne's false arrest and false imprisonment claims are dismissed.

Bourne also argues that she was unlawfully searched by Detective Marquez at the Narcotics Bureau. Although Bourne testified that Detective Marquez's search only amounted to a patdown, Detective Marquez testified that she had Bourne remove her blouse, pants and shoes in an office bathroom. (*Compare* Dep. of Bourne at 73-74 *with* Dep. of Detective Marquez at 95-97.) Drawing this inference in Bourne's favor and assuming that a strip search was conducted, the Fourth Amendment only proscribes those searches and seizures that are unreasonable given the circumstances and nature of the search and seizure itself. *See Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989). Although a lawful arrest creates a presumption of reasonableness regarding an attendant strip search, the reasonableness of a strip search depends upon: (1) the scope of the intrusion; (2) the manner in which the search is conducted; (3) the justification for initiating the search; and (4) the place in which the search is conducted. *Bolden v. Village of Monticello*, 344 F. Supp. 2d 407, 417 (S.D.N.Y. 2004) (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Detective Marquez's justification to strip search

Bourne after her lawful arrest rests upon the need to disarm her and to preserve evidence concealed on her body. *See Virginia v. Moore*, -- U.S. --, 128 S.Ct. 1598, 1607-08 (2008) (citing *United States v. Robinson*, 414 U.S. 218, 234-35 (1973)). Bourne has established that Detective Marquez's search was at most minimally invasive because Bourne was only required to remove her outergarments. This was based upon Detective Marquez's reasonable suspicion that Bourne might be concealing contraband or weapons on her body or inside her undergarments. Further, the search was conducted by an officer of the same sex as Bourne in the privacy of a bathroom. Given these circumstances and Detective Marquez's justification in effectuating the search, no jury would conclude that Defendants acted unreasonably. Accordingly, Bourne's unlawful search claim is dismissed.[7]

Bourne further claims that Defendants committed assault by placing her in handcuffs and then placing her in a police car. Under New York law, "[a]n assault and battery occurs when a person is placed in imminent apprehension of harmful or offensive bodily contact and there is an actual use of force." *Cunningham v. United States*, 472 F. Supp. 2d 366, 380 (E.D.N.Y. 2007) (citation and internal quotation marks omitted). "However, where there has been a lawful arrest, intentional contact with the arrested person does not constitute assault and battery, provided such

---

[7] Although Bourne's response papers refer to the strip search that occurred upon her incarceration at the Nassau County Correctional Center, Bourne has not properly asserted such a claim because the correctional officers are not named defendants. However, reading Bourne's complaint as broadly as possible, the court finds that any such claim would fail as a matter of law because it is well-established that a correctional facility has a special interest in preventing the introduction of secreted contraband into its population. *See N.G. v. Connecticut*, 382 F.3d 225, 234-37 (2d Cir. 2004); *Covino v. Patrissi*, 967 F.2d 73, 76-80 (2d Cir. 1992). Further, Bourne's arrest was for felony as opposed to misdemeanor drug possession. This action therefore does not fall within the line of cases that held that the Nassau County Correctional Center's blanket policy of strip searching misdemeanor detainees violated the Fourth Amendment. *Cf. Shain v. Ellison*, 53 F. Supp. 2d 564 (E.D.N.Y. 1999), *aff'd*, 273 F.3d 56 (2d Cir. 2001).

force is reasonable." *Id*. at 381 (citations omitted). In order for Bourne to sustain her assault claim, she must show that the force used after her lawful arrest was excessive. *See id*. at 383 (citations omitted). However, Bourne has not raised any evidence to suggest that Defendants used excessive force in apprehending her, and a reasonable jury would conclude that her traffic stop and arrest was instead simply routine. Accordingly, Bourne's assault claim is dismissed.

Finally, Bourne claims that the County of Nassau bears municipal liability due to its failure to adequately train and supervise the individual defendants. In order to sustain this cause of action, Bourne must prove *inter alia* that an official policy of the County of Nassau caused her to suffer a constitutional injury. *See Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). For the reasons given above, Bourne has failed to prove a constitutional injury and, even if she had, Bourne has not raised any evidence showing that it resulted from the County of Nassau's official policy. Accordingly, Bourne's municipal liability claim is dismissed.

## CONCLUSION

Defendants' motion for summary judgment is granted. Accordingly, Bourne's complaint is dismissed in its entirety.

Dated: Central Islip, New York
       January 20, 2009

SO ORDERED:

_____/s/_____
ARLENE ROSARIO LINDSAY
United States Magistrate Judge

17